UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| LESLIE JAMES JONES,<br><br>    Plaintiff,<br><br>    v.<br><br>A.Z. SCOTLAND, et al.,<br><br>    Defendants. | No. 2:12-cv-00633 TLN DAD P<br><br>FINDINGS & RECOMMENDATIONS |

Plaintiff Leslie James Jones is a former state prisoner proceeding pro se and in forma pauperis in this civil rights action filed pursuant to 42 U.S.C. § 1983 and Title II of the Americans with Disabilities Act, 42 U.S.C. 12131 et seq. ("ADA").[1]  In his first amended complaint ("FAC"), plaintiff alleges that, while he was incarcerated at California State Prison-Solano ("CSP-Solano"), the eleven named defendants violated his rights under the First, Eighth, and Fourteenth Amendments, as well as the ADA.  Among the named defendants is the California Department of Corrections and Rehabilitation ("CDCR").  Presently before the court is CDCR's motion for dismissal from plaintiff's first amended complaint pursuant to Federal Rule of Civil Procedure 12(b)(6).

/////

---

[1] The action is referred to a United States Magistrate Judge pursuant to 28 U.S.C. § 636(b)(1)(B), Local Rule 302(c), and Local General Order No. 262.

For the reasons set forth below, the court recommends that defendant CDCR be dismissed from this action.

I. Background

    A. Procedural Background

Plaintiff commenced this action by filing his complaint on March 13, 2012. On April 9, 2013, the court screened plaintiff's initial complaint pursuant to 28 U.S.C. § 1915A(a) and dismissed it with leave to amend. (ECF No. 7.) On September 6, 2013, plaintiff filed the operative FAC. (ECF No. 9.)

On March 4, 2014, the court determined that service of the FAC was appropriate on defendants Lieutenant A.Z. Scotland, Sergeant B. Clark, Correctional Officer S. Ringler, Correctional Officer M. Ruiz, Sergeant P.R. Chambers, Correctional Officer T. Doane, Correctional Officer K. McMasters, Lieutenant R.M. Blackwell, Captain T. Wamble, and CDCR. (ECF No. 13.) On May 16, 2014, all defendants except CDCR filed a joint Answer. (ECF No. 16.) On June 10, 2014, defendant CDCR filed the instant motion to dismiss. (ECF No. 22.) On July 11, 2014, plaintiff filed an opposition to that motion. (ECF No. 23.) On July 16, 2014, defendant CDCR filed a reply. (ECF No. 25.)

    B. Factual Allegations

In his FAC, plaintiff alleges as follows. At all relevant times, plaintiff was an inmate at CSP-Solano. (ECF No. 9 at 7-8.) The gravamen of plaintiff's complaint is his claim that, on May 11, 2010, he was placed in a standing-only holding cage for more than three hours. (Id. at 5.) At the time, plaintiff had a disability, used a cane to walk, had been issued a medical chrono instructing "no prolonged standing," and was wearing a green vest indicating that his mobility was impaired. (Id.) As a result of being confined in the cage, plaintiff's right leg became severely swollen and painful. (Id. at 6.) Plaintiff was then forced to walk to administrative segregation without his cane. (Id. at 7.) Plaintiff was also denied the use of a bathroom during this entire period despite being on medication for high blood pressure that caused him to need to urinate. (Id. at 5.)

/////

Plaintiff's allegations regarding defendant CDCR are reproduced, in their entirety, as follows:

> Claim C: Americans with Disabilities Act (ADA) Claim Appeal No. SOL-10-00769.
>
> Plaintiff is an inmate incarcerated by the California Department of Corrections and Rehabilitations, and is a participant in the Disability Placement Program (DPP) with a (1845 disability verification notice) and classified with a medical disability and was issued and wearing a green [Mobility Impaired Disability Vest] on May 11, 2010. Plaintiff was excluded from and denied the services of a public entity (ie) the California Department of Corrections and Rehabilitation when Plaintiff was denied / Excluded from a medical service. A doctor ordered a service that plaintiff be provided with and use a medical cane because of his disability.
>
> Plaintiffs cane was taken and plaintiff was denied a benefit of a prison service ordered by a medical doctor because of his Handicap. Plaintiff was "Discriminated" against because other inmates with disabilities, and having Dr. ordered canes were not excluded from or denied the use of these Dr. ordered medical appliances as I was! It should also be noted that the "First Level Review", dated August 3, 2010, was denied, stating: "Staff did not violate CDCR policy with respect to "ADA"! But the "second Level review stated: "The Second level review disagrees with the First level review decision," in that staff did violate CDCR policy, specifically as it relates to Departmental ADA policy for Reasonable Accommodations. The "Third level review, dated September 26, 2011" concurred with the Second level review, therefore, no relief will be provided at the third level.

(Id. at 9.)[2]

Defendant CDCR moves to dismiss, contending that plaintiff has failed to state a cognizable claim for relief against it.

II. Standards

    A. Standard for a Motion to Dismiss Pursuant to Rule 12(b)(6)

A motion to dismiss pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure tests the sufficiency of the complaint. North Star Int'l v. Arizona Corp. Comm'n, 720 F.2d 578, 581 (9th Cir. 1983). Dismissal of the complaint, or any claim within it, "can be based on the lack of a cognizable legal theory or the absence of sufficient facts alleged under a cognizable legal

---

[2] This quotation is taken verbatim from plaintiff's FAC. All parentheses, brackets, and typographical errors are reproduced as they appear in the original document.

1  theory." Balistreri v. Pacifica Police Dep't, 901 F.2d 696, 699 (9th Cir. 1990). See also
2  Robertson v. Dean Witter Reynolds, Inc., 749 F.2d 530, 534 (9th Cir. 1984). In order to survive
3  dismissal for failure to state a claim a complaint must contain more than "a formulaic recitation of
4  the elements of a cause of action;" it must contain factual allegations sufficient "to raise a right to
5  relief above the speculative level." Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 555 (2007).

6        In determining whether a pleading states a cognizable claim, the court accepts as true all
7  material allegations in the complaint and construes those allegations, as well as the reasonable
8  inferences that can be drawn from them, in the light most favorable to the plaintiff. Hishon v.
9  King & Spalding, 467 U.S. 69, 73 (1984); Hosp. Bldg. Co. v. Trustees of Rex Hosp., 425 U.S.
10 738, 740 (1976); Love v. United States, 915 F.2d 1242, 1245 (9th Cir. 1989). In the context of a
11 motion to dismiss, the court also resolves doubts in the plaintiff's favor. Jenkins v. McKeithen,
12 395 U.S. 411, 421 (1969). However, the court need not accept as true conclusory allegations,
13 unreasonable inferences, or unwarranted deductions of fact. W. Mining Council v. Watt, 643
14 F.2d 618, 624 (9th Cir. 1981).

15       In general, pro se pleadings are held to a less stringent standard than those drafted by
16 lawyers. Haines v. Kerner, 404 U.S. 519, 520 (1972). The court has an obligation to construe
17 such pleadings liberally. Bretz v. Kelman, 773 F.2d 1026, 1027 n.1 (9th Cir. 1985) (en banc).
18 The court's liberal interpretation of a pro se complaint, however, may not supply essential
19 elements of the claim that were not pled. Ivey v. Bd. of Regents of Univ. of Alaska, 673 F.2d
20 266, 268 (9th Cir. 1982); see also Pena v. Gardner, 976 F.2d 469, 471 (9th Cir. 1992).

21       B.   Standard for ADA Disability Discrimination claim
22       Title II of the ADA prohibits discrimination on the basis of disability, as follows: "[N]o
23 qualified individual with a disability shall, by reason of such disability, be excluded from
24 participation in or be denied the benefits of the services, programs, or activities of a public entity,
25 or be subjected to discrimination by any such entity." 42 U.S.C. § 12132. Title II of the ADA
26 apples to inmates within state prisons. Pa. Dept. of Corrs. v. Yeskey, 524 U.S. 206 (1998) ("State
27 prisons fall squarely within the statutory definition of 'public entity.'"). A plaintiff may bring a
28 claim under Title II of the ADA against state entities for damages. Phiffer v. Columbia River

Corr. Institute, 384 F.3d 791, 792 (9th Cir. 2004) ("Our precedent clearly commands the conclusion that the State is not entitled to Eleventh Amendment immunity under Title II of the ADA.").

In order to state a claim under Title II of the ADA, a plaintiff must allege that:

> (1) he is an individual with a disability; (2) he is otherwise qualified to participate in or receive the benefit of some public entity's services, programs, or activities; (3) he was either excluded from participation in or denied the benefits of the public entity's services, programs, or activities, or was otherwise discriminated against by the public entity; and (4) such exclusion, denial of benefits, or discrimination was by reason of [his] disability.

Simmons v. Navajo Cnty., 609 F.3d 1011, 1021 (9th Cir. 2010).

"To recover monetary damages under Title II of the ADA or the Rehabilitation Act, a plaintiff must prove intentional discrimination on the part of the defendant." Duvall v. Cnty. of Kitsap, 260 F.3d 1124, 1138 (9th Cir.2001) (citing Ferguson v. City of Phoenix, 157 F.3d 668, 674 (9th Cir.1998) (footnote omitted)). In Duvall, the Ninth Circuit held that deliberate indifference is the appropriate standard to use in determining whether intentional discrimination occurred. Id. "Deliberate indifference requires both knowledge that a harm to a federally protected right is substantially likely, and a failure to act upon that likelihood." Id. at 1138 (citing City of Canton v. Harris, 489 U.S. 378, 389 (1988)). In order to meet the second element of the deliberate indifference test, a failure to act must be the result of conduct that is more than negligent and involves an element of deliberateness. Id. at 1139.

III. Analysis

Defendant CDCR moves to dismiss plaintiff's sole claim against it, pled under the ADA, on the grounds that "in order to obtain damages, [plaintiff] must allege and prove intentional discrimination on the part of the Defendant CDCR. Because [plaintiff] does not allege facts showing that Defendant CDCR intentionally discriminated against him, his claim for damages fails and Defendant CDCR should be dismissed from this action." (Motion, ECF No. 22 at 4.)

Defendant CDCR's argument is persuasive. While there is no question that defendant CDCR, as a "department [or] agency . . . of a State" is a "public entity" for purposes of the ADA, 42 U.S.C. § 12131(1), plaintiff has failed to allege any facts demonstrating that he "was . . .

5

discriminated against by the public entity," Simmons, 609 F.3d at 1021, as opposed to the individual defendants named in his complaint. Plaintiff's allegations against CDCR rest solely on the following conduct:

> Plaintiffs [sic] cane was taken and plaintiff was denied a benefit of a prison service ordered by a medical doctor because of his Handicap. Plaintiff was "Discriminated" against because other inmates with disabilities, and having Dr. ordered canes were not excluded from or denied the use of these Dr. ordered medical appliances as I was!

(ECF No. 9 at 9.) However, plaintiff does not allege that the individual defendants acted in accordance with CDCR policy when they took his cane. To the contrary, he alleges that "staff did violate CDCR policy, specifically as it relates to Departmental ADA policy for Reasonable Accommodations." (ECF No. 9 at 9.) Absent an allegation that CDCR was previously aware of the alleged discriminatory conduct by these individually-named defendants that it failed to correct, defendant CDCR cannot be held responsible for violations of CDCR policy by these individually-named defendants.

As pled, plaintiff's complaint therefore does not state a claim against CDCR. The issue, then, is whether to grant plaintiff leave to amend to augment this claim.

In his opposition, plaintiff argues that "[d]efendant CDCR has a systemic problem with its continued policy violations, employees violating ADA Rules, Regulations, and is improperly trained with respect to the ADA. These events are constant and happen every day at one institution or another."[3] (ECF No. 23 at 3.) In support of this argument, he cites Jaladian v. Hernandez, no. 1:09-cv-01980-AWI-MJS (E.D. Cal.), a case which he characterizes as factually "almost identical" to his own. (Id.)

To the extent plaintiff argues that his injuries were due to defendant CDCR's systemic failure to comply with the ADA, it appears that such claims are encompassed by standing orders in the long-running class action litigation in Armstrong v. Brown, No. C 94-2307 CW (N.D.

---

[3] In his opposition to CDCR's motion to dismiss, plaintiff presents a new factual allegation: that his "doctor-order[ed] disability vest was taken" by defendants, in violation of his rights under the ADA. (Id. at 2.) Even if this allegation had been pled in plaintiff's FAC, it would not change the analysis set forth herein.

Cal.). Armstrong was filed in 1994 by a "class of all present and future California state prison inmates and parolees with disabilities [who] sued California state officials in their official capacities, seeking injunctive relief for violations of the [Rehabilitation Act of 1973] and the ADA in state prisons." Armstrong v. Wilson, 124 F.3d 1019, 1021 (9th Cir. 1997). The Armstrong court eventually certified a class that included "all present and future California state prisoners and parolees with mobility, sight, hearing, learning, developmental and kidney disabilities that substantially limit one or more of their major life activities." Armstrong v. Brown, 857 F. Supp. 2d 919, 924 (N.D. Cal. 2012). Plaintiff, as a California state prisoner with a mobility disability, was a member of the Armstrong class in May 2010, when the incident alleged in his FAC took place. Eventually, the Armstrong court:

> ordered CDC and related Defendants to develop plans to ensure that their facilities and programs were compliant with [Title II of the ADA] and readily accessible to and usable by prisoners and parolees with disabilities. The order also required Defendants to develop policies to provide a prompt and equitable disability grievance procedure, to allow approved assistive aids for prisoners with disabilities in segregation units and reception centers, and to ensure accessibility in new construction and alterations. [. . .] The Armstrong Court retained jurisdiction to enforce [the order's] terms.

Id. The court-ordered remedial plan in Armstrong requires the CDCR, among other things, "to ensure that prisoners and parolees with disabilities . . . are able to obtain and keep necessary assistive devices . . . ." Id. at 925 (emphasis added). This provision would appear to encompass plaintiff's claims that he was deprived of his cane in violation of the ADA. The remedial plan provides for creation of a "Disability Placement Program": CDCR's "set of plans, policies, and procedures to assure nondiscrimination against inmates/parolees with disabilities." Curry v. Tilton, No. C–07–0775 EMC, 2012 WL 967062 at *1 (N.D. Cal. Mar. 21, 2012). CDCR "use[s] an inmate disability verification form (i.e., a CDC-1845 form) to record an inmate's disabilities." Id. at *2. Because plaintiff alleges that he "is a participant in the Disability Placement Program (DPP) with a (1845 disability verification notice)" (FAC (ECF No. 9) at 9), it appears that the accommodations that plaintiff was afforded, and then deprived of, are the subject of the Armstrong class action litigation. Finally, the court notes that, in 2012, the Armstrong class

7

moved for a court order seeking to hold CDCR in contempt for failing to comply with a prior 2007 court order requiring CDCR to:

> develop a system for holding wardens and prison medical administrators accountable for compliance with the Armstrong Remedial Plan and the orders of this Court. This system shall track the record of each institution and the conduct of individual staff members who are not complying with these requirements. Defendants shall refer individuals with repeated instances of non-compliance to the Office of Internal Affairs for investigation and discipline, if appropriate.

Armstrong v. Brown, No. C 94–2307 CW, 2012 WL 3638675 (N.D. Cal. Aug. 22, 2012), vacated in part, Armstrong v. Brown, 768 F.3d 975 (9th Cir. 2014). In moving for contempt proceedings, the class cited numerous instances in which alleged violations of the Armstrong court's orders were not tracked by CDCR, much less investigated and found to require discipline. The Armstrong court ultimately declined to hold CDCR in contempt, but did modify its 2007 order so as to clarify CDCR's responsibilities to track, investigate, and when necessary, discipline the perpetrators of, incidents in which any "employee of [CDCR] was responsible for any member of the Plaintiff class not receiving access to services, programs, activities, accommodations or assistive devices required by any of the following: the Armstrong Remedial Plan, the Americans with Disabilities Act or this Court's prior orders." 2012 WL 3638675 at *10. As demonstrated by these proceedings, plaintiff's contention, in his opposition, that "[d]efendant CDCR has a systemic problem with its continued policy violations, employees violating ADA Rules, Regulations, and is improperly trained with respect to the ADA," (ECF No. 23 at 3), remains an on-going issue which is being addressed by the court in the class action Armstrong case.[4]

Accordingly, the undersigned recommends dismissal of defendant CDCR from this action. Moreover, having carefully considered the appropriateness of granting plaintiff leave to file a second amended complaint, the undersigned recommends that the dismissal of CDCR from this action be with prejudice. In two iterations of his complaint, plaintiff has failed to identify any specific conduct or omission by CDCR that, first, caused or resulted in the deprivation he

---

[4] Plaintiff may contact Armstrong class counsel regarding his claims by U.S. mail at the following address: Prison Law Office, General Delivery, San Quentin, CA 94964.

describes, and second, is not encompassed by the Armstrong class action litigation. It appears that the defects in pleading "could not possibly be cured by the allegation of other facts," Lopez v. Smith, 203 F.3d 1122, 1130-31 (9th Cir. 2000) (en banc) (quoting Doe v. U.S., 58 F.3d 494, 497 (9th Cir. 1995)), and therefore, that further amendment would be futile.

IV. Conclusion

Based on the foregoing, IT IS HEREBY RECOMMENDED that

1. Defendant CDCR's motion to dismiss (ECF No. 21) be granted; and
2. That the dismissal of CDCR as a defendant in this action be with prejudice.

These findings and recommendations are submitted to the United States District Judge assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(l). Within fourteen days after being served with these findings and recommendations, any party may file written objections with the court and serve a copy on all parties. Such a document should be captioned "Objections to Magistrate Judge's Findings and Recommendations." Any response to the objections shall be served and filed within fourteen days after service of the objections. The parties are advised that failure to file objections within the specified time may waive the right to appeal the District Court's order. Martinez v. Ylst, 951 F.2d 1153 (9th Cir. 1991).

Dated: February 2, 2015

DALE A. DROZD
UNITED STATES MAGISTRATE JUDGE

DAD:10
jone0633.mtd