UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

LESLIE JAMES JONES,

            Plaintiff,

    v.

A Z SCOTLAND, et al.,

            Defendants.

No.  2:12-cv-00633 TLN DB P

ORDER AND FINDINGS AND
RECOMMENDATIONS

       Plaintiff is a state prisoner proceeding pro se and in forma pauperis with a civil rights action under 42 U.S.C. § 1983 and the Americans with Disabilities Act (ADA) alleging correctional officers were deliberately indifferent to his medical needs, retaliated against him for filing a grievance, used excessive force against him, and violated his due process rights.  Before the court are defendants' motion for summary judgment (ECF No. 48), defendants' evidentiary objections and motion to strike plaintiff's opposition (ECF No. 59), defendants' motion to strike plaintiff's unauthorized surreply (ECF No. 61), and plaintiff's motion for clarification (ECF No. 62). [1]

////

_____

[1] All defendants were employed by the California Department of Corrections and Rehabilitation (CDCR) during the relevant time for the plaintiff's current case.

1

1    I.    **Background**

2          A.    **Procedural**

3          Plaintiff is currently proceeding on his first amended complaint (FAC).  (ECF No. 9.)  In

4    the FAC, plaintiff claims that his First Amendment rights were violated when: (1) Defendant

5    McMaster searched his bunk area on March 28, 2010; (2) Defendant Doane searched his bunk

6    area on March 29, 2010, and submitted a rules violation report (RVR) regarding his altered

7    mattress; (3) Defendant Chambers found him guilty of the RVR and assessed a $77.60 hold on

8    plaintiff's trust account; and (4) Defendant Wamble recommended plaintiff's transfer to another

9    prison.  (Id. at 12-13.)

10         Plaintiff claims defendants Clark, Ruiz, Ringler, and Scotland were deliberately

11   indifferent to his serious medical needs, in violation of the Eighth Amendment, when he was

12   escorted on May 11, 2010, to the center complex, while handcuffed behind his back and without

13   the use of a cane.  (Id. at 4-5.)  He further asserts these defendants were deliberately indifferent

14   when they secured him in a holding cell, despite his purported no "prolonged standing"

15   accommodation chrono, and when they did not permit him to use the restroom.  (Id. at 5-6.)

16         Plaintiff also claims that defendants Clark, Ruiz, and Ringler used excessive force by

17   securing him in the holding cell without access to a restroom.  (Id. at 7.)  He further claims that

18   defendants Ruiz and Ringler used excessive force when they escorted him handcuffed behind his

19   back, and without his cane, from the center complex to Administrative Segregation (Ad-Seg).

20   (Id. at 7-8.)

21         Plaintiff then claims defendants Clark, Chambers, Blackwell, and Wamble violated his

22   procedural due process rights under the Fourteenth Amendment when they submitted and

23   approved an RVR regarding plaintiff's alleged false allegations against a peace officer.  (Id. at

24   10-11.)  Plaintiff supports this claim by noting he successfully challenged the RVR, had it

25   reversed, and had his lost credits restored.  (Id. at 11.)

26         Defendants filed a motion for summary judgment.  (ECF No. 48.)  Plaintiff opposes the

27   motion.  (ECF No. 55.)  Defendants filed a reply memorandum.  (ECF No. 58.)  Plaintiff then

28   filed an unauthorized surreply.  (ECF No. 60.)  Defendants filed evidentiary objections and

moved to strike portions of plaintiff's opposition.  (ECF No. 59.)  Defendants also filed a motion to strike plaintiff's unauthorized surreply.  (ECF No. 61.)  Plaintiff did not respond to the evidentiary objections or the motion to strike.  Instead, plaintiff filed only a document titled as a "motion for clarification," which simply asserts that plaintiff was acting in "good faith" to prosecute this action pro se and that he was not aware of certain rules.  (ECF No. 62.)

The summary judgment motion is now ripe for review. The court will also address the objections and motions to strike as part of this omnibus order and findings and recommendations.  For the reasons outlined below, the undersigned orders that defendants' evidentiary objections and motion to strike plaintiff's opposition (ECF No. 59) is granted in part and denied in part; defendants' objections and motion to strike plaintiff's unauthorized surreply (ECF No. 61) is denied; and plaintiff's motion for clarification (ECF No. 62) is denied.  For the following reasons, the undersigned respectfully recommends that defendants' motion for summary judgment (ECF No. 48) be granted.

### B.    Factual

#### 1.    Defendants' Evidentiary Objections and Motions to Strike

Before setting forth the factual background, the court will address defendants' objections to the evidence presented by plaintiff and the manner in which the evidence is presented.  (ECF No. 59.)  Additionally, the court will herein address defendants' motion to strike plaintiff's unauthorized surreply.  (ECF No. 60.)

##### a.    Global Objections and Motion to Strike Surreply

As a preliminary matter, defendants object to plaintiff's opposition and attachments as a whole because they do not comply with Federal Rule of Civil Procedure 56(c) and Local Rule 260(b).  (ECF No. 59 at 2.)  Specifically, plaintiff failed to reproduce defendants' statement of undisputed facts and failed to admit or deny those facts pursuant to Local Rule 260(b).  (See ECF No. 55.)  Plaintiff also failed to include citations to the "particular portions of any pleading, affidavit, deposition, interrogatory answer, admission, or other document relied upon" to establish his facts.  E.D. Cal. L.R. 260(b).  Although plaintiff provides a statement of what he considers disputed facts, these facts are merely questions and conclusions of law that defendants

3

1    violated his rights.  (ECF No. 55 at 4-5.)  Furthermore, plaintiff does not cite to his own

2    evidence to support his assertion that material facts are genuinely disputed.  (Id.)

3         In plaintiff's unauthorized surreply, however, there is an effort to pinpoint specific

4    disputes of facts and to cite to evidence in support of those disputes.  (ECF No. 60.)

5    Additionally, plaintiff attached a sworn declaration to his initial opposition, which provides a

6    detailed explanation of the incidents at the heart of plaintiff's claims and acts as factual support

7    for plaintiff's opposition to the motion for summary judgment.  (ECF No. 55-1.)  The court will

8    consider these documents in its analysis.

9         "A district court does not have a duty to search for evidence that would create a factual

10   dispute."  Bias v. Moynihan, 508 F.3d 1212, 1219 (9th Cir. 2007).  Here, however, certain pieces

11   of evidences are readily available on the record, even if not cited to appropriately by plaintiff.

12   Thus, the present circumstances do not represent an "unfair" burden on the court, requiring the

13   court to either strike or totally disregard plaintiff's opposition and all of the attachments.  See

14   Carmen v. S.F. Unified Sch. Dist., 237 F.3d 1026, 1031 (9th Cir. 2001) (holding that it would be

15   "unfair" to the district court to require it "to search the entire record" if a party fails to "disclose

16   where in the record the evidence for [the factual claims] can be found").  While the court will not

17   act as plaintiff's counsel or search the entire record in the case, the court will consider plaintiff's

18   opposition, unauthorized surreply, and certain evidence, such as plaintiff's declaration, which is

19   readily ascertainable and applicable to facts at issue in the motion for summary judgment.

20        However, the court will not consider the portions of plaintiff's 377 pages of exhibits

21   attached to his opposition that are not cited to in the opposition or surreply.  A district court lacks

22   the power to act as a party's lawyer, even for pro se litigants.

23

24        The hazards which beset a layman when he seeks to represent himself are
          obvious.  He who proceeds pro se with full knowledge and understanding of the
25        risks does so with no greater rights than a litigant represented by a lawyer, and the
          trial court is under no obligation to become an "advocate" for or to assist and
26        guide the pro se layman through the trial thicket.

27   Jacobsen v. Filler, 790 F.2d 1362, 1365 n. 5 (9th Cir. 1986) (quoting United States v. Pinkey,

28   548 F.2d 305, 311 (10th Cir. 1977)).

4

1          Thus, even with a pro se inmate litigant, the court is not burdened with the task of

2   searching the entire record to discover whether there is any evidence that supports plaintiff's

3   claims.  Accordingly, the court will not address evidence submitted by plaintiff but not cited to

4   in the opposition or the surreply.  Plaintiff's sworn declaration, which was filed separately from

5   the opposition, is a manageable 19 pages in length, and contains a plainly-worded narrative of

6   the events from which plaintiff's claims arise, will be considered, as will portions of plaintiff's

7   377 pages of exhibits that he refers to in his arguments.

8          Additionally, the court will consider plaintiff's unauthorized surreply in its entirety.

9   While the surreply does not explicitly state so, it appears to represent an attempt by plaintiff to

10   present actual evidence to support factual disputes.  The Ninth Circuit has held that courts should

11   liberally construe motion papers filed by a pro se litigant.  Thomas v. Ponder, 611 F.3d 1144,

12   1150 (9th Cir. 2010).  In this instance, the surreply, in at least a small way, attempts to address

13   some of the deficiencies pointed out by defendants in their evidentiary objections and motion to

14   strike (ECF No. 59).  In fairness to plaintiff, therefore, the court denies defendants' motion to

15   strike (ECF No. 61) the unauthorized surreply based upon plaintiff's misunderstanding of certain

16   procedures and rules, as well as his "good faith" efforts to address those misunderstandings.

17   (See ECF No. 62 (plaintiff's "motion for clarification" concerning defendants' objections and

18   motion to strike).)

19          Furthermore, the court also denies plaintiff's "motion for clarification" because, despite

20   the heading, it is not actually a motion, but rather a response to defendants' objections and

21   motions to strike.  (See id.)

22                              **b.**        **Medical Opinions**

23          Defendants specifically object to plaintiff's testimony in his sworn declaration (1) that

24   his blood pressure medication increases his need to urinate, and (2) that his right leg became

25   severely swollen because he was forced to stand in the holding cell.  (ECF No. 59 at 2-3.)

26   Federal Rule of Evidence 701 states that lay witness testimony, in the form of an opinion, cannot

27   be based on scientific or specialized knowledge within the scope of Rule 702.  Federal Rule of

28   Evidence 702 states that only a witness who is qualified as an expert may testify in the form of

1    an opinion.  The undersigned rejects this argument.

2           The testimony defendants attempt to strike is not actually opinion, but rather plaintiff's

3    firsthand observation and experience concerning medically-related phenomena.  Plaintiff's

4    declaration states he informed defendants Ringler and Ruiz that he "had taken water pills for my

5    high blood pressure which makes you urinate." (ECF No. 55-1 at 2.)  This is not necessarily an

6    opinion, however, but simply a statement of fact based upon plaintiff's own observations as the

7    one taking the medication.  Furthermore, if the court were to consider this an opinion pursuant to

8    Federal Rule of Evidence 701, it would still be admissible as the opinion of a lay person, which

9    is "(a) rationally related to the witness' perception; (b) helpful to clearly understanding the

10   witness' testimony . . . ; and (c) not based on scientific, technical, or other specialized

11   knowledge[.]" Fed. R. Evid. 701.  Plaintiff's testimony about his medication is based solely on

12   his perception, is helpful in understanding the effect of the medication on plaintiff, and is not

13   based upon scientific knowledge that is outside plaintiff's expertise.  Accordingly, this objection

14   is overruled.

15          Defendants also object to plaintiff's statement that he was "held over three (3) hours in

16   which Plaintiff's leg became severely swollen from prolonged standing[.]"  (ECF No. 55-1 at

17   15.)  As with plaintiff's statement concerning his blood pressure medication, this represents a

18   firsthand observation plaintiff's physical condition, not a medical opinion.  Furthermore, even if

19   subject to Federal Rule of Evidence 701 as a lay opinion, the statement is still admissible

20   because it is (a) based upon plaintiff's perception, (b) helpful to understanding plaintiff's

21   testimony about his physical condition, and (c) not based upon any specialized scientific

22   knowledge.  See Fed. R. Evid. 701.  Accordingly, this objection is also overruled.

23                          c.     **Irrelevant and Inadmissible Exhibits**

24          Defendants also object to Exhibits B, C, D, G, and I attached to plaintiff's opposition.

25   (ECF No. 59 at 3-6.)  However, the court already determined above that it will not consider these

26   exhibits -- which are found from pages 20 through 397 of plaintiff's opposition (ECF No. 55) --

27   because they are never actually cited to by plaintiff in his opposition and the court cannot be

28   burdened with the task of sorting through hundreds of pages of documentation without any

guidance whatsoever as to how each piece of evidence relates to potential disputes of fact.  (See supra at 3-5.)  Accordingly, defendants' specific evidentiary objections concerning these exhibits are now moot and the court need not address them.

## 2.      Statement of Facts

The below statement of facts is derived from the parties' statements of undisputed facts, oppositions to the statements of undisputed facts, the allegations in plaintiff's FAC, and all declarations and other records submitted on the record and referred to by the parties in their filings for the court's consideration on this summary judgment motion.  (ECF Nos. 9; 48-2; 48-3; 48-4; 48-6; 48-7; 48-8; 48-9; 48-10; 48-11; 48-12; 48-13; 48-14; 48-15; 48-16; 48-17; 48-18; 55; 55-1; 58; 60.)  The following facts are undisputed by the parties or, following the court's review, have been deemed undisputed for purposes of the pending motion.

Plaintiff is a former California state prisoner.  Plaintiff was housed at California State Prison, Solano (CSP-Solano) during the relevant times.  Defendants were each employed by California Department of Corrections and Rehabilitation (CDCR) at CSP-Solano during the relevant time.  Defendant Wamble was a correctional captain; defendants Blackwell and Scotland were correctional lieutenants; defendants Clark and Chambers were correctional sergeants; and defendants McMaster, Doane, Ringler, Ruiz were correctional officers.

### a.      Grievance Number CSP-S-10-00238

Plaintiff alleges that he submitted a group grievance, log number CSP-S-10-00238, concerning the death of an inmate named Brown.  (ECF No. 9 at 12.)  Plaintiff alleges that defendants retaliated against him for filing this grievance.  (Id.)  However, grievance log number CSP-S-10-00238 was submitted by a different inmate concerning that inmate's request for restoration of credits and is wholly unrelated to the incidents in this lawsuit.

### b.      Defendant McMaster's Search on March 28, 2010

On March 28, 2010, defendant McMaster searched plaintiff's bunk area.  Plaintiff was not present for the search.  This search was one of the three daily searches defendant McMaster was tasked to perform as part of her regular duties.

////

7

1    Defendant McMaster confiscated items plaintiff was not permitted to possess, including

2    excess toilet paper, rocks, a large binder clip, cardboard, and black sneakers.  The items

3    defendant McMaster confiscated were contraband that inmates are not authorized to possess for

4    institutional safety and security.  Defendant McMaster documented the items confiscated during

5    the search.  She further indicated that plaintiff was to receive follow-up counseling regarding the

6    contraband, that he did not have a current medical order for the shoes, and that he needed a

7    current medical order to keep the shoes.  Later that day, plaintiff's black shoes were returned to

8    him.  Defendant McMaster did not initiate any administrative or disciplinary actions against

9    plaintiff in relation to the search.

10                          **c.      Defendant Doane's Search on March 29, 2010**

11    Defendant McMaster conducted a security check throughout plaintiff's housing building

12    the next day, on March 29, 2010.  During her rounds, she noticed an unusually thick mattress on

13    plaintiff's bunk.  She did not notice the mattress the previous day.  Defendant McMaster

14    informed her partner, defendant Doane, about the mattress.  Defendant Doane discovered the

15    mattress had been opened up, stuffed with another mattress, and re-sewn by hand.  The mattress

16    found on the inside had also been altered, as its cover had been cut across the length of it.

17    Inmates are not permitted to alter their state-issued property, including their mattresses.

18    Defendant Doane documented his findings on a CDCR Form 115 RVR due to his belief that

19    plaintiff had altered his state-issued mattress, in violation of prison regulations.

20                          **d.      RVR No. S4-10-13-0181**

21    Defendant Doane's RVR was assigned log number S4-10-03-0181 and classified as an

22    administrative offense.  It was within defendant Chambers' duties to preside over administrative

23    offenses.  She was the hearing officer for defendant Doane's RVR.  Plaintiff asserted that he had

24    received the altered mattress as-is from another staff member.  Defendant Chambers'

25    investigation revealed that the mattress plaintiff received from that other staff member had been

26    confiscated six months earlier because it was also torn on the side.  Based on the evidence,

27    defendant Chambers found plaintiff guilty of an administrative offense for possession of altered

28    state-issued property and placed a hold on plaintiff's trust account for $77.60, to reimburse the

1    costs of two mattresses.

2           Plaintiff submitted grievance log number CSPS-10-00937 regarding the RVR.  Plaintiff

3    was reimbursed the $77.60.  The RVR was not dismissed.

4                   **e.        Incidents Related to Non-Party Hardin**

5           On the morning of May 11, 2010, at around 6:50 AM, defendant Doane received a

6    request via his institutional radio to search an inmate named Hardin because he was seen with a

7    suspicious item in his hand.  Defendant Doane conducted a clothed body search, but did not find

8    any contraband.

9           At around 7:30 AM, Hardin came to defendant Clark intending to submit a sexual

10   harassment complaint against defendant Doane.  Defendant Clark spoke with Hardin to

11   investigate the situation.  Defendant Clark informed him that CDCR takes sexual harassment

12   investigations seriously and would require his removal from general population during the

13   investigation.  Hardin then began to retract his statements concerning defendant Doane.

14   Defendant Clark continued to speak with Hardin, and then spoke with defendant Doane, another

15   officer who witnessed the search, and plaintiff.  Defendant Clark's investigation revealed that

16   after defendant Doane conducted the search, Hardin then spoke to plaintiff, and plaintiff

17   encouraged him to submit a sexual harassment complaint against defendant Doane.  There was

18   no evidence to support the allegation that defendant Doane's search was inappropriate or

19   unprofessional.

20          Based on this information, defendant Clark believed plaintiff violated prison rules by

21   making false allegations of peace officer misconduct, and believed it created a security concern

22   for the institution because plaintiff was stoking agitation and resentment against defendant

23   Doane.

24                   **f.        Plaintiff's Escort from Building 19 to Center Complex**

25          On May 11, 2010, at approximately 8:15 AM, plaintiff was escorted from CSP-Solano's

26   Facility 4, Building 19, to the Facility 4, center complex.  The two buildings were around fifty

27   yards apart.  The escort lasted five minutes or less.  Plaintiff was handcuffed behind his back and

28   at least one staff member held on to plaintiff by his upper arm.  During that walk, plaintiff was

"toiling and stumbling," and "pulled and tugged."   Plaintiff did not have a valid accommodation chrono precluding his ability to walk or stand during the escort.

Plaintiff was a member of CDCR's Disability Placement Program (DPP) and classified as DNM.  This indicated that he had permanent lower extremity mobility impairments but could walk one hundred yards, and up a flight of stairs without pausing, with or without aides.

### g.     Center Complex Holding Cell Placement

Upon entering the center complex, plaintiff walked past defendant Scotland's office.  He did not talk to defendant Scotland.  Plaintiff was then secured in holding cell number 1 by defendant Ruiz at around 8:15 AM.  Plaintiff was secured in the holding cell as part of his processing to Ad-Seg.

At 8:50 AM, defendant Ringler escorted plaintiff to be seen by medical staff, so that he could be evaluated before his placement in Ad-Seg.  The walk to the medical annex took less than five minutes.  Plaintiff was evaluated by non-party medical staff and deemed medically fit for placement in Ad-Seg.

At around 9:15 AM, plaintiff and defendant Ringler returned to the center complex holding cells, and plaintiff was re-secured in a holding cell.  The holding cell was a standing only cell.  At around 11:05 AM, defendant Clark released plaintiff from the holding cell for his escort to Ad-Seg.

While in the center complex holding cell, plaintiff asked to use the restroom at least one time.  Plaintiff asserts that his blood pressure medication causes an increased need to urinate.  Plaintiff did not show any defendants present an accommodation chrono for his purported disabilities concerning walking and his restroom needs.  Plaintiff did not have a valid "no prolonged standing" chrono at the time.  Rather, his chrono provided instructions for custody staff not to expect plaintiff to "get down."

### h.     Escort from Center Complex to Ad-Seg

At around 11:05 AM, plaintiff was escorted by defendant Ringler out of the center complex and to Ad-Seg.  The Facility 4 center complex and Ad-Seg were about 200-250 yards apart.  The walk took around eight to nine minutes.  Defendant Clark was not a part of the escort

to Ad-Seg.  Defendant Ruiz escorted another inmate to Ad-Seg and not plaintiff.   During the escort, plaintiff and defendant Ringler passed through a gate, and plaintiff did not inform officers at the gate that he was unable to walk.

Plaintiff was not forced to the ground at any time.  No chemical agents or weapons were used during the escort.  At most, plaintiff only had to "march" to Ad-Seg, which, according to plaintiff, meant that he was being escorted while handcuffed, and against his own "free will."

### i.      Plaintiff's RVR, Housing in Ad-Seg, and Transfer

Defendant Clark submitted a RVR for plaintiff's involvement in making false allegations against defendant Doane.  Defendant Chambers approved the RVR.  Plaintiff remained in Ad-Seg pending investigation and resolution of the RVR.  Defendant Blackwell found plaintiff guilty of the charged offense, assessed a sixty-day loss of credits, and referred plaintiff to an Institutional Classification Committee (ICC) to consider his transfer to another institution. Defendant Wamble approved the RVR findings and disposition.  On June 24, 2010, plaintiff appeared before an ICC, which elected to transfer him to another prison.  Due to the RVR disposition, plaintiff's classification score increased to 29, which qualified him for placement on a level-three yard.  The ICC's decision to transfer plaintiff was approved and endorsed by a non-party CDCR headquarters representative on June 30, 2010.

Plaintiff submitted a grievance challenging the RVR.  The grievance resulted in dismissal of the RVR, because the offense that plaintiff was convicted of was no longer recognized by the California Code of Regulations.  Plaintiff's credit-loss was restored and his case factors were adjusted accordingly.  Plaintiff was paroled on June 8, 2013.  He was discharged from parole on July 2, 2015.

## II.     Legal Standard for Summary Judgment

Summary judgment is appropriate when there is "no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a).  Summary judgment avoids unnecessary trials in cases in which the parties do not dispute the facts relevant to the determination of the issues in the case, or in which there is insufficient evidence for a jury to determine those facts in favor of the nonmovant.  Crawford–El v. Britton, 523 U.S. 574, 600

1   (1998); Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247-50 (1986); Nw. Motorcycle Ass'n v.

2   U.S. Dep't of Agric., 18 F.3d 1468, 1471-72 (9th Cir. 1994).  At bottom, a summary judgment

3   motion asks whether the evidence presents a sufficient disagreement to require submission to a

4   jury.

5          The principal purpose of Rule 56 is to isolate and dispose of factually unsupported claims

6   or defenses.  Celotex Cop. v. Catrett, 477 U.S. 317, 323-24 (1986). Thus, the rule functions to

7   "'pierce the pleadings and to assess the proof in order to see whether there is a genuine need for

8   trial.'"  Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986)

9   (quoting Fed. R. Civ. P. 56(e) advisory committee's note on 1963 amendments).  Procedurally,

10  under summary judgment practice, the moving party bears the initial responsibility of presenting

11  the basis for its motion and identifying those portions of the record, together with affidavits, if

12  any, that it believes demonstrate the absence of a genuine issue of material fact.  Celotex, 477

13  U.S. at 323; Devereaux v. Abbey, 263 F.3d 1070, 1076 (9th Cir. 2001) (en banc).  If the moving

14  party meets its burden with a properly supported motion, the burden then shifts to the opposing

15  party to present specific facts that show there is a genuine issue for trial. Fed. R. Civ. P. 56(e);

16  Anderson, 477 U.S. at 248; Auvil v. CBS "60 Minutes", 67 F.3d 816, 819 (9th Cir. 1995).

17         A clear focus on where the burden of proof lies as to the factual issue in question is

18  crucial to summary judgment procedures.  Depending on which party bears that burden, the

19  party seeking summary judgment does not necessarily need to submit any evidence of its own.

20  When the opposing party would have the burden of proof on a dispositive issue at trial, the

21  moving party need not produce evidence which negates the opponent's claim.  See e.g., Lujan v.

22  National Wildlife Fed'n, 497 U.S. 871, 885 (1990).  Rather, the moving party need only point to

23  matters which demonstrate the absence of a genuine material factual issue.  See Celotex, 477 U

24  .S. at 323-24 ("[W]here the nonmoving party will bear the burden of proof at trial on a

25  dispositive issue, a summary judgment motion may properly be made in reliance solely on the

26  'pleadings, depositions, answers to interrogatories, and admissions on file.'").  Indeed, summary

27  judgment should be entered, after adequate time for discovery and upon motion, against a party

28  who fails to make a showing sufficient to establish the existence of an element essential to that

1    party's case, and on which that party will bear the burden of proof at trial.  See id. at 322.  In

2    such a circumstance, summary judgment must be granted, "so long as whatever is before the

3    district court demonstrates that the standard for entry of summary judgment . . . is satisfied."  Id.

4    at 323.

5            To defeat summary judgment the opposing party must establish a genuine dispute as to a

6    material issue of fact.  This entails two requirements.  First, the dispute must be over a fact(s)

7    that is material, i.e., one that makes a difference in the outcome of the case.  Anderson, 477 U.S.

8    at 248 ("Only disputes over facts that might affect the outcome of the suit under the governing

9    law will properly preclude the entry of summary judgment.").  Whether a factual dispute is

10   material is determined by the substantive law applicable for the claim in question.  Id.  If the

11   opposing party is unable to produce evidence sufficient to establish a required element of its

12   claim that party fails in opposing summary judgment.  "[A] complete failure of proof concerning

13   an essential element of the nonmoving party's case necessarily renders all other facts

14   immaterial."  Celotex, 477 U.S. at 322.

15          Second, the dispute must be genuine.  In determining whether a factual dispute is genuine

16   the court must again focus on which party bears the burden of proof on the factual issue in

17   question.  Where the party opposing summary judgment would bear the burden of proof at trial

18   on the factual issue in dispute, that party must produce evidence sufficient to support its factual

19   claim.  Conclusory allegations, unsupported by evidence are insufficient to defeat the motion.

20   Taylor v. List, 880 F.2d 1040, 1045 (9th Cir. 1989).  Rather, the opposing party must, by

21   affidavit or as otherwise provided by Rule 56, designate specific facts that show there is a

22   genuine issue for trial.  Anderson, 477 U.S. at 249; Devereaux, 263 F.3d at 1076.  More

23   significantly, to demonstrate a genuine factual dispute the evidence relied on by the opposing

24   party must be such that a fair-minded jury "could return a verdict for [him] on the evidence

25   presented."  Anderson, 477 U.S. at 248, 252.  Absent any such evidence there simply is no

26   reason for trial.

27          The court does not determine witness credibility.  It believes the opposing party's

28   evidence, and draws inferences most favorably for the opposing party.  See id. at 249, 255;

13

1   Matsushita, 475 U.S. at 587.  Inferences, however, are not drawn out of "thin air," and the

2   proponent must adduce evidence of a factual predicate from which to draw inferences.

3   American Int'l Group, Inc. v. American Int'l Bank, 926 F.2d 829, 836 (9th Cir. 1991) (Kozinski,

4   J., dissenting) (citing Celotex, 477 U.S. at 322).  If reasonable minds could differ on material

5   facts at issue, summary judgment is inappropriate.  See Warren v. City of Carlsbad, 58 F.3d 439,

6   441 (9th Cir. 1995).  On the other hand, "[w]here the record taken as a whole could not lead a

7   rational trier of fact to find for the nonmoving party, there is no 'genuine issue for trial.'"

8   Matsushita, 475 U.S. at 587 (citation omitted); Celotex, 477 U.S. at 323 (if the evidence

9   presented and any reasonable inferences that might be drawn from it could not support a

10   judgment in favor of the opposing party, there is no genuine issue).  Thus, Rule 56 serves to

11   screen cases lacking any genuine dispute over an issue that is determinative of the outcome of

12   the case.

13          Defendants' motion for summary judgment included a "Rand notice" (ECF No. 48-1) to

14   plaintiff informing him of the requirements for opposing a motion pursuant to Rule 56 of the

15   Federal Rules of Civil Procedure.  See Woods v. Carey, 684 F.3d 934 (9th Cir. 2012); Rand v.

16   Rowland, 154 F.3d 952, 957 (9th Cir. 1998) (en banc), cert. denied, 527 U.S. 1035 (1999);

17   Klingele v. Eikenberry, 849 F.2d 409 (9th Cir. 1988).

18   **III.   Legal Analysis**

19          **A.      First Amendment Retaliation Claims**

20          "Within the prison context, a viable claim of First Amendment retaliation entails five

21   basic elements: (1) An assertion that a state actor took some adverse action against an inmate (2)

22   because of (3) that prisoner's protected conduct, and that such action (4) chilled the inmate's

23   exercise of his First Amendment rights, and (5) the action did not reasonably advance a

24   legitimate correctional goal."  Rhodes v. Robinson, 408 F.3d 559, 567-68 (9th Cir. 2004).  An

25   inmate must show that protected First Amendment conduct was the but-for cause of the

26   defendant's retaliatory action.  Hartman v. Moore, 547 U.S. 250, 260 (2006).

27          Defendants move for summary judgment on plaintiff's First Amendment retaliation

28   claims on the following two grounds: (1) Defendants were not motivated by retaliatory animus;

14

1    and (2) The uniform enforcement of prison rules serves legitimate penological goals.  (ECF No.

2    48-5 at 17-23.)  The court's review finds that defendants' actions could not have been motivated

3    by retaliatory animus, so it is unnecessary to address the second ground asserted.

**1.      Defendants' Motivations**

5          Plaintiff claims that his First Amendment rights were violated when: (1) Defendant

6    McMaster searched his bunk area on March 28, 2010; (2) Defendant Doane searched his bunk

7    area on March 29, 2010, and submitted a rules violation report (RVR) regarding his altered

8    mattress; (3) Defendant Chambers found him guilty of the RVR and assessed a $77.60 hold on

9    plaintiff's trust account; and (4) Defendant Wamble recommended plaintiff's transfer to another

10   prison.  (ECF No. 9 at 12-13.)

11         "The inquiry into causation must be individualized and focus on the duties and

12   responsibilities of each individual defendant whose acts or omissions are alleged to have caused

13   a constitutional deprivation."  Leer v. Murphy, 844 F.2d 628, 633 (9th Cir. 1988).  The court will

14   address the alleged motivations of each defendant in turn below.

**a.      Defendants McMasters and Doane**

16         Plaintiff alleges that defendants McMasters and Doane retaliated against him because he

17   submitted a group appeal, log number CSP-S-10-00238, regarding another inmate's suicide on

18   February 16, 2010.  (ECF No. 9 at 12.)  However, the inmate appeal that plaintiff identifies as

19   CSP-S-10-00238 in his FAC (ECF No. 9 at 12) and his declaration (ECF No. 55-1 at 10) was

20   actually submitted by another inmate on January 29, 2010 and concerned that inmate's

21   restoration of credits.  (ECF No. 48-15 at 26-32.)  While plaintiff's declaration describes a group

22   appeal that he prepared and signed with two other inmates concerning defendant McMaster's

23   purported failure to adequately monitor a suicidal inmate who ultimately killed himself (ECF

24   No. 55-1 at 10), the documentary evidence on the record concerning grievance CSP-S-10-00238

25   shows that it was not submitted by plaintiff and did not concern this lawsuit.

26         While the court is aware from defendants' evidentiary objections (ECF No. 59 at 6) that

27   plaintiff submitted a document that he claims is the actual group appeal (ECF No. 55 at 353-57),

28   the court cannot consider the document submitted.  The document plaintiff submitted includes

1    just a few pages of a draft inmate grievance concerning another inmate's suicide.  (Id.)  The

2    document is unauthenticated; there are no markings that it was ever received, assigned a log

3    number, or considered by the prison authorities.  Plaintiff filed his declaration simultaneously

4    with this document in opposition to the motion for summary judgment, but, in the declaration,

5    plaintiff still refers to the relevant group appeal as CSP-S-10-00238.  (ECF No. 55-1 at 10.)

6            Where opposing parties tell two different stories, one of which is "blatantly contradicted"

7    by the record so that no reasonable jury could believe it, the court should not adopt that version

8    of the facts.  Scott v. Harris, 550 U.S. 372, 380 (2007).  Plaintiff's contention that he filed group

9    appeal number CSP-S-10-00238 concerning the suicide by another inmate is blatantly

10   contradicted by the record.  The only support for plaintiff's position is his own declaration

11   (which, as noted above, refers to appeal number CSP-S-10-00238) that he submitted said group

12   appeal and an unauthenticated document he claims is that appeal.  "When the non-moving party

13   relies on its own affidavits to oppose summary judgment, it cannot rely on conclusory

14   allegations unsupported by factual data to create an issue of material fact."  Hansen v. United

15   States, 7 F.3d 137, 138 (9th Cir. 1993).

16           Plaintiff's assertion that he filed CSP-S-10-00238 as a group appeal concerning the

17   suicide of another inmate is conclusory and unsupported by any factual data to create a genuine

18   issue of material fact.  "A conclusory, self-serving affidavit, lacking detailed facts and any

19   supporting evidence, is insufficient to create a genuine issue of material fact."  F.T.C. v.

20   Publishing Clearing House, Inc., 104 F.3d 1168, 1171 (9th Cir. 1997).  Therefore, the undisputed

21   facts establish that CSP-S-10-00238 is unrelated to this case, that CSP-S-10-00238 was not filed

22   by plaintiff, and that plaintiff has provided no factual support for the contention that he filed a

23   group appeal critical of defendant McMaster.

24           Accordingly, defendants McMaster and Doane necessarily could not have been

25   motivated by CSP-S-10-00238 in their purported actions against plaintiff.  For this reason, the

26   court should grant summary judgment in favor of these defendants concerning the retaliations

27   claims.

28   ////

                                                    16

### b.   Defendant Chambers

Plaintiff claims that defendant Chambers retaliated against him by telling him he would be charged for the altered mattresses and to "stay out of McMaster's business concerning" the inmate's suicide before defendant Doane's RVR was adjudicated.  (ECF No. 48-15 at 11-12.) Thus, plaintiff also alleges that defendant Chambers was motivated by the same inmate appeal, which was not submitted by plaintiff and is wholly unrelated to the issues of this case. Accordingly, for the same reasons as with defendants McMaster and Doane, the court should grant summary judgment for defendant Chambers concerning the retaliation claim.

### c.   Defendant Wamble

Plaintiff claims that defendant Wamble's recommendation that plaintiff be transferred after the second RVR was also retaliatory.  (ECF No. 9 at 13.)  Plaintiff's claim for retaliation against defendant Wamble consists of only a single sentence, however, and does not indicate what defendant Wamble was purportedly retaliating against plaintiff for.  Specifically, the allegation against defendant Wamble states: "Captain T. Wamble retaliated against me by endorsing a transfer he knew was based on frivolous RVR's and charges that did not advance any legitimate correctional goal or legitimate correctional purpose."  There is no further evidence on the record concerning defendant Wamble's motivation; although, the conclusory allegation against defendant Wamble is in the same general section as the allegations for retaliation against defendants McMaster and Doane, so it is possible to infer that plaintiff is asserting the same motivation.

If plaintiff is asserting the same motivation as the above defendants, it must fail for the same reasons: the inmate grievance referenced by plaintiff is not related to this case.  Therefore, the court should grant summary judgment for defendant Wamble concerning the retaliation claim.

### B.   Eighth Amendment Deliberate Indifference Claims

"[D]eliberate indifference to serious medical needs of prisoners constitutes the unnecessary and wanton infliction of pain, proscribed by the Eighth Amendment.  This is true whether the indifference is manifested by prison doctors in their response to the prisoner's needs

17

1    or by prison guards in intentionally denying or delaying access to medical care or intentionally

2    interfering with the treatment once prescribed." Estelle v. Gamble, 429 U.S. 97, 104-05 (1976)

3    (internal citations, punctuation and quotation marks omitted).  "Prison officials are deliberately

4    indifferent to a prisoner's serious medical needs when they 'deny, delay or intentionally interfere

5    with medical treatment.'"  Wood v. Housewright, 900 F.2d 1332, 1334 (9th Cir. 1990) (quoting

6    Hutchinson v. United States, 838 F.2d 390, 394 (9th Cir. 1988)).

7         "A 'serious' medical need exists if the failure to treat a prisoner's condition could result

8    in further significant injury or the 'unnecessary and wanton infliction of pain.'"  McGuckin v.

9    Smith, 974 F.2d 1050, 1059 (9th Cir. 1992), overruled on other grounds, WMX Technologies v.

10   Miller, 104 F.3d 1133 (9th Cir. 1997) (en banc) (quoting Estelle, 429 U.S. at 104).  Serious

11   medical needs include "[t]he existence of an injury that a reasonable doctor or patient would find

12   important and worthy of comment or treatment; the presence of a medical condition that

13   significantly affects an individual's daily activities; [and] the existence of chronic and substantial

14   pain."  McGuckin, 974 F.2d at 1059-60.

15        To prevail on a claim for deliberate indifference to serious medical needs, a prisoner

16   must demonstrate that a prison official "kn[ew] of and disregard[ed] an excessive risk to inmate

17   health or safety; the official must both be aware of the facts from which the inference could be

18   drawn that a substantial risk of serious harm exists, and he must also draw the inference."

19   Farmer v. Brennan, 511 U.S. 825, 837 (1994).

20        "In the Ninth Circuit, the test for deliberate indifference consists of two parts.  First, the

21   plaintiff must show a serious medical need by demonstrating that failure to treat a prisoner's

22   condition could result in further significant injury or the unnecessary and wanton infliction of

23   pain.  Second, the plaintiff must show the defendant's response to the need was deliberately

24   indifferent.  This second prong . . . is satisfied by showing (a) a purposeful act or failure to

25   respond to a prisoner's pain or possible medical need and (b) harm caused by the indifference."

26   Jett v. Penner, 439 F.3d 1091, 1096 (9th Cir. 2006) (internal citations, punctuation and quotation

27   marks omitted); accord, Wilhelm v. Rotman, 680 F.3d 1113, 1122 (9th Cir. 2012); Lemire v.

28   CDCR, 726 F.3d 1062, 1081 (9th Cir. 2013).

18

"The indifference to a prisoner's medical needs must be substantial.  Mere 'indifference,' 'negligence,' or 'medical malpractice' will not support this claim.  Even gross negligence is insufficient to establish deliberate indifference to serious medical needs."  Lemire, 726 F.3d at 1081-82 (internal citations, punctuation and quotation marks omitted); accord, Cano v. Taylor, 739 F.3d 1214, 1217 (9th Cir. 2014).

Whether a defendant had requisite knowledge of a substantial risk of harm is a question of fact.  "[A] factfinder may conclude that a prison official knew of a substantial risk from the very fact that the risk was obvious.  The inference of knowledge from an obvious risk has been described by the Supreme Court as a rebuttable presumption, and thus prison officials bear the burden of proving ignorance of an obvious risk. . . . [D]efendants cannot escape liability by virtue of their having turned a blind eye to facts or inferences strongly suspected to be true[.]"  Coleman v. Wilson, 912 F. Supp. 1282, 1316 (E.D. Cal. 1995) (citing Farmer, 511 U.S. at 842-43) (internal quotation marks omitted).

When the risk is not obvious, the requisite knowledge may still be inferred by evidence showing that the defendant refused to verify underlying facts or declined to confirm inferences that he strongly suspected to be true.  Farmer, 511 U.S. at 842.  On the other hand, prison officials may avoid liability by demonstrating "that they did not know of the underlying facts indicating a sufficiently substantial danger and that they were therefore unaware of a danger, or that they knew the underlying facts but believed (albeit unsoundly) that the risk to which the facts gave rise was insubstantial or nonexistent."  Id. at 844.  Thus, liability may be avoided by presenting evidence that the defendant lacked knowledge of the risk and/or that his response was reasonable in light of all the circumstances.  Id. at 844-45; see also Wilson v. Seiter, 501 U.S. 294, 298 (1991); Thomas v. Ponder, 611 F.3d 1144, 1150-51 (9th Cir. 2010).

Defendants move for summary judgment on the grounds that they were not deliberately indifferent to plaintiff's serious medical needs when they escorted plaintiff from his housing building to the center complex, and when they secured him in a holding cell in the center complex.  (ECF No. 48-5 at 24-26.)

////

19

1

           **1.**        **<u>Escort from Housing Building to Center Complex</u>**

2

       Plaintiff claims he had disabilities in his knee which required him to use a cane.  (ECF

3 No. 9 at 4.)  He further asserts that he had an "ADA vest" which implied that he required special

4 accommodations.  He claims that defendants Ringler, Ruiz, and Clark were deliberately

5 indifferent to his serious medical needs when they handcuffed him behind his back and escorted

6 him from his housing building to the center complex at a fast pace.

7

       The undisputed facts show plaintiff was escorted from CSP-Solano's Facility 4, Building

8 19, to the Facility 4, center complex, shortly before 8:15 AM.  (ECF No. 48-18 at 34, 37.)

9 Although he was handcuffed behind his back, at least one officer held on to his arm.  (ECF No.

10 48-15 at 13-14.)  Plaintiff walked about fifty yards and for around five minutes or less.  (ECF

11 No. 48-12 at 2.)

12

       While the parties dispute whether plaintiff was wearing an "ADA vest" and had trouble

13 walking, this is immaterial because it is undisputed that he did not produce a valid

14 accommodation chrono at any time, as he did not have one.  (ECF Nos. 48-17 at 47; 48-15 at

15 20.)  Plaintiff's records show that his most recent accommodation chrono, dated February 16,

16 2010, did not preclude him from being handcuffed, walking, or standing for any period of time.

17 (ECF No. 48-17 at 47.)  Additionally, plaintiff was categorized as an inmate with "DNM"

18 classification under CDCR's Disability Placement Program.  (ECF No. 48-13 at 3.)  Pursuant to

19 the <u>Armstrong</u> remedial plan, inmates designated as DNM are those "with permanent lower

20 extremity mobility impairments who can walk 100 yards and up a flight of stairs without

21 pausing, with or without aides."  (ECF No. 48-2 at 12.)

22

       Thus, according to official prison protocol, plaintiff was capable of making the 50-yard

23 walk without any specialized assistance.  Plaintiff declares that he was "forced to march at an

24 extremely fast pace in which [he] was toiling and stumbling trying to keep pace[.]"  (ECF No.

25 55-1 at 1.)  Viewing this in the light most favorable to plaintiff, the fact that he was having some

26 visible difficulty walking is insufficient to show that defendants were aware that he required

27 special accommodations when plaintiff's medical chrono -- issued just months before the

28 incident -- mentioned no accommodation and his particular designation as DNM classified him

1  as capable of walking up to 100 yards without assistance.  (See ECF Nos. 48-2 at 12; 48-17 at

2  47.)

3       While "a factfinder may conclude that a prison official knew of a substantial risk from

4  the very fact that the risk was obvious[,]" Coleman, 912 F. Supp. at 1316, plaintiff's testimony

5  of simply "toiling and stumbling" while making the 50-yard walk is insufficient to establish an

6  obvious, substantial risk to his health.  This is particularly true when, as in this case, plaintiff's

7  medical chronos provide no special walking accommodations and the staff member walking with

8  plaintiff held onto his arm (ECF No. 55-1 at 1), effectively mitigating any danger from plaintiff's

9  stumbling.  Under the totality of the circumstances, defendants could not have drawn an

10  inference that plaintiff faced substantial danger: plaintiff did not have a medical chrono requiring

11  special treatment for his escort; plaintiff was classified as an inmate capable of walking 100

12  yards unassisted; and plaintiff was held onto by a defendant during the course of the walk,

13  mitigating any danger from falling.

14       Accordingly, the facts cannot establish that defendants were aware or should have been

15  aware of any substantial danger to plaintiff's health from walking him 50 yards from one facility

16  to another.  See Farmer, 511 U.S. at 844.  Therefore, the court should grant summary judgment

17  concerning the deliberate indifference claim relating to plaintiff's five-minute, fifty-yard walk to

18  the center complex.

19            **2.    Securing Plaintiff in Holding Cell in Center Complex**

20       Plaintiff claims that defendants Scotland, Clark, Ringler, and Ruiz were deliberately

21  indifferent when he was secured in a holding cell that was for standing only.  (ECF No. 9 at 5-6.)

22  Plaintiff asserts he told defendant Clark he had a "no prolonged standing" chrono and defendant

23  Clark told him "sit on the floor."  (Id. at 5.)  Plaintiff further asserts that defendants Ringler and

24  Ruiz laughed and walked away.  Sometime later, defendant Scotland secured another inmate in a

25  holding cell nearby, and saw plaintiff in the holding cell.  (Id. at 6.)  Plaintiff further claims these

26  defendants were deliberately indifferent to his need to use the restroom, which was prompted by

27  taking "water pills" for his high blood pressure.  (Id.)

28  ////

1    As addressed above concerning plaintiff's walk to the center complex, plaintiff did not

2    have a valid medical chrono concerning prolonged standing.  (ECF No. 48-17 at 47.)  Thus,

3    despite the dispute about whether plaintiff was wearing his green "ADA vest," defendants were

4    not on notice of any special accommodations plaintiff required due to his medical conditions,

5    other than his DNM status, which established that he was able to walk 100 yards unassisted.

6    Plaintiff was escorted to the center complex at 8:15 AM.  (ECF No. 48-18 at 34, 37.)

7    Plaintiff was then secured in the holding cell for approximately 35 minutes before he was seen

8    by the medical staff for his pre-Ad-Seg admission checkup at 8:55 AM.  (Id. at 38.)  Plaintiff

9    was then escorted back to the holding cell at 9:15 AM.  (Id. at 37.)  The "Holding Cell Log"

10   created contemporaneous to the events (id.) and defendant Ringler's declaration (ECF No. 11)

11   indicate that between 9:15 AM and 11:00 AM, plaintiff was checked on every fifteen minutes by

12   prison staff.  At 11:05 AM, plaintiff was released from the holding cell.  (ECF No. 48-18 at 37.)

13   While plaintiff declares without factual support that he was in the holding cell for more than

14   three hours, the undisputed facts on the records, including the contemporaneously-created

15   "Holding Cell Log," demonstrate that he was in the cell for only two hours total: 25 minutes

16   before his medical appointment and one hour and 35 minutes after the medical appointment.

17   (Id.)

18   Only objectively extreme deprivations denying the minimal civilized measure of life's

19   necessities are sufficiently grave to form the basis of an Eighth Amendment violation.  Farmer,

20   511 U.S. at 834.  To the extent that plaintiff's conditions in the holding cell were "restrictive and

21   even harsh, they are part of the penalty criminal defendants must pay for offenses against

22   society."  Rhodes v. Chapman, 452 U.S. 337, 347 (1981).  Defendants' actions of placing an

23   inmate with no special accommodations in a standing only holding cell for two hours simply do

24   not rise to the level of an extreme deprivation to establish an Eighth Amendment violation.

25   Furthermore, temporary deprivations of access to a restroom for around two hours do not

26   pose a serious threat of harm and cannot support an Eighth Amendment claim.  See Gunn v.

27   Tilton, No. 08-cv-1039-PHX, 2011 WL 1121949, at *3-4 (E.D. Cal. Mar. 23, 2011) ("While

28   Plaintiff was not given access to water for approximately six hours, or restrooms for three to four

hours, these deprivations were temporary and the duration was not such that it posed a threat of serious physical harm or illness."); see also Decker v. Dunbar, 633 F. Supp. 2d 317, 341 (E.D. Tex. 2008), aff'd, 358 F. App'x 509 (5th Cir. 2009) (inmate claiming a prostate condition urinated in his pants after placed in a holding cell and denied access to a toilet for three hours). Thus, the court finds that plaintiff's detention in the standing-only holding cell for two hours without access to a restroom was not sufficiently serious to form a basis for an Eighth Amendment violation.

Accordingly, the court should grant summary judgment for defendants concerning the holding cell claim.

**C.      Excessive Force Claims**

The Eighth Amendment prohibits the infliction of "cruel and unusual punishments." U.S. Const. amend. VIII. The "unnecessary and wanton infliction of pain" constitutes cruel and unusual punishment prohibited by the United States Constitution.  Whitley v. Albers, 475 U.S. 312, 319 (1986).  Neither accident nor negligence constitutes cruel and unusual punishment, as "[i]t is obduracy and wantonness, not inadvertence or error in good faith, that characterize the conduct prohibited by the Cruel and Unusual Punishments Clause."  Id.

What is needed to show unnecessary and wanton infliction of pain "varies according to the nature of the alleged constitutional violation."  Hudson v. McMillian, 503 U.S. 1, 5 (1992) (citing Whitley, 475 U.S. at 320).  To prevail on an Eighth Amendment claim the plaintiff must show that objectively he suffered a "sufficiently serious" deprivation.  Farmer v. Brennan, 511 U.S. 825, 834 (1994); Wilson v. Seiter, 501 U.S. 294, 298–99 (1991).  The plaintiff must also show that subjectively each defendant had a culpable state of mind in allowing or causing the plaintiff's deprivation to occur.  Farmer, 511 U.S. at 834.

It is well established that "whenever prison officials stand accused of using excessive physical force in violation of the Cruel and Unusual Punishments Clause, the core judicial inquiry is that set out in Whitley, i.e., whether force was applied in a good-faith effort to maintain or restore discipline, or maliciously and sadistically to cause harm."  Hudson, 503 U.S.
////

23

at 6–7.  A prisoner is not required to show a "significant injury" to establish that he suffered a sufficiently serious constitutional deprivation.  Id. at 9–10.

The Ninth Circuit has relied on the Hudson factors in determining whether an officer's application of force was applied in a good faith effort to restore discipline.  Martinez v. Stanford, 323 F.3d 1178, 1184 (9th Cir. 2003).  These factors are: 1) the extent of the injury suffered by an inmate; 2) the need for application of force; 3) the relationship between that need and the amount of force used; 4) the threat reasonably perceived by the responsible officials; and 5) any efforts made to temper the severity of a forceful response.  Id.  From these factors, inferences may be drawn as to whether the use of force could plausibly have been thought necessary, or instead evinced such wantonness with respect to the unjustified infliction of harm as is tantamount to a knowing willingness that it occur.  "Equally relevant are such factors as the extent of the threat to the safety of staff and inmates, as reasonably perceived by the responsible officials on the basis of facts known to them, and any efforts made to temper the severity of a forceful response."  Whitley, 475 U .S. at 321.

Defendants move for summary judgment on the grounds that the evidence does not support the allegations that defendants used excessive force on plaintiff by securing him in a holding cell for a period of hours and by escorting plaintiff from the center complex to Ad-Seg.  (ECF No. 48-5 at 26-29.)

**1.      Securing Plaintiff in Holding Cell in Center Complex**

Plaintiff claims that forcing him to stand in a holding cell constitutes excessive force in violation of the Eighth Amendment.  (ECF No. 9 at 7.)

There is no evidence that defendants secured plaintiff in the holding cell "maliciously and sadistically for the purpose of causing harm."  Whitley, 475 U.S. at 320-21.  The undisputed facts show plaintiff was secured in the holding cell initially for 25 minutes, and then again for one hour and 35 minutes.  (ECF No. 48-18 at 37.)  While plaintiff alleges without factual support that this deprivation was done for malicious purposes, the undisputed facts on the record indicate otherwise.

////

24

1    Plaintiff was placed in the holding cell as part of his processing to Ad-Seg.  (ECF No. 48-

2    8 at 2-3.)  During that time, other staff members went back to his bunk area and collected his

3    property.  (Id.)  The holding cell also provided a means to segregate plaintiff from other inmates

4    and staff members.  (Id.)  It also prevented plaintiff from hurting himself or from other inmates

5    from hurting him.  (Id.)  There is simply no evidence, aside from plaintiff's conclusory

6    allegations concerning the mindset of defendants, that plaintiff was secured in the holding cell

7    for any purpose other than to maintain discipline and security.

8    Plaintiff did not have an accommodation chrono precluding him from standing in the

9    holding cell, and he was categorized as an inmate who could freely walk without assistance.

10   (ECF Nos. 48-13 at 3; 48-17 at 47.)  No reasonable juror could find that plaintiff's temporary

11   placement in the holding cell, requiring him to stand for one hour and 35 minutes at the longest,

12   was "repugnant to the conscience of mankind."  Wilkins, 559 U.S. at 37-38.  Should plaintiff's

13   placement in the holding cell be considered force at all, it would, at most, be categorized as de

14   minimis and necessary to effectuate control and safety during plaintiff's processing to Ad-Seg.

15   Accordingly, the court should grant summary judgment in favor of defendants

16   concerning the excessive force claim arising from plaintiff's placement in the holding cell.

17                    **2.       Escort from Center Complex to Ad-Seg**

18   Plaintiff next claims defendants used excessive force when they forced him to walk from

19   the center complex to Ad-Seg while handcuffed and elected not to transport him using a

20   "medical cart."  (ECF No. 9 at 7.)  Plaintiff claims that he had a "severely swollen leg" from

21   having to stand in the center complex holding cell and that he was not permitted to use his

22   purportedly doctor-ordered cane.  (ECF No. 55-1 at 3.)  As with the above claims, plaintiff's

23   medical chronos at the time of this walk did not preclude him from walking and did not require

24   any sort of medical cart.  (ECF No. 48-17 at 47.)  Additionally, plaintiff's DNM status indicated

25   that he was capable of walking "100 yards and up a flight of stairs without pausing, with or

26   without aides."  (ECF No. 48-2 at 12.)

27   ////

28   ////

1    The walk at issue in this claim was approximately 200-250 yards and took around eight

2    to nine minutes.  (ECF Nos. 48-11 at 3; 48-15 at 23.)  Plaintiff stated in his deposition that

3    defendant Ringler was not "trying to beat [him] up or just shuffle" him while they walked.  (ECF

4    No. 48-15 at 22.)  Additionally, plaintiff did not tell any staff members that he was unable to

5    walk during this escort.  (Id.)  Pursuant to plaintiff's DNM status, he can walk up to 100 yards

6    with pausing or assistance; yet, during this escort he did not attempt to stop the walk or tell any

7    other staff members he had trouble walking while he went through two separate gates on his way

8    to Ad-Seg.  (Id.)

9    Plaintiff cannot sustain an excessive force claim on these facts.  No force was used

10   during this brief and uneventful escort.  Defendant Ringler furthermore could not have known

11   plaintiff faced any risk by walking because his accommodation chrono did not call for special

12   transportation.  Medical staff had also recently cleared plaintiff for Ad-Seg placement.  Although

13   plaintiff was classified as able to walk one hundred yards unassisted, in this case, defendant

14   Ringler assisted plaintiff by holding on to his arm, which mitigated any stumbling and prevented

15   any risk of falling.

16   Furthermore, plaintiff has presented no evidence that plaintiff suffered any lasting or

17   significant injury because of the escort.  Like the holding cell placement, to the extent any force

18   was used, it was de minimis and only to maintain discipline and security during the escort.  The

19   escort amounted to no more than a "push or shove" that the Supreme Court has found

20   insufficient to be considered excessive force.  Wilkins, 559 U.S. at 38.

21   Accordingly, the court should grant summary judgment in favor of defendants

22   concerning plaintiff's escort from the center complex to Ad-Seg.

23   **D.    Due Process Claims**

24   The Fourteenth Amendment to the United States Constitution provides in part that no

25   state shall deprive any person of life, liberty, or property, without due process of law.  U.S.

26   Const. amend. XIV.  To state a claim for a procedural due process violation, an inmate must

27   establish facts showing that correctional officials denied him a liberty or property interest

28   without adequate process.  Matthews v. Eldridge, 424 U.S. 319, 335 (1976).

26

1    The first step in a due-process analysis is to determine whether an inmate had a protected

2  liberty interests. Inmates generally do not have a Fourteenth Amendment liberty interest in

3  avoiding "more adverse conditions of confinement." Wilkinson v. Austin, 545 U.S. 209, 221

4  (2005).  Being housed in administrative segregation "in and of itself does not implicate a

5  protected liberty interest." Serrano v. Francis, 345 F.3d 1071, 1078 (9th Cir. 2003).  However,

6  an inmate is entitled to due process protections when placed in disciplinary segregation if it

7  imposes an "atypical and significant hardship on the inmate in relation to the ordinary incidents

8  of prison life." Sandin v. Conner, 515 U.S. 472, 484 (1995).

9    In evaluating the alleged hardship, the Court examines: (1) whether the challenged

10  condition "mirrored those conditions imposed upon inmates in administrative segregation and

11  protective custody," and thus comported with the prison's discretionary authority; (2) the

12  duration of the condition, and the degree of restraint imposed; and (3) whether the state's action

13  will invariably affect the duration of the prisoner's sentence. Serrano, 345 F.3d at 1078 (citing

14  Sandin, 515 U.S. at 486-87).  If no liberty interest is at stake, then the inmate's claim must fail,

15  and no further inquiry is called for. Erickson v. U.S., 67 F.3d 858, 861 (9th Cir. 1995).

16    If an inmate identifies a liberty interest, then the second step is to determine what process

17  was due. See Wolf v. McDonnell, 418 U.S. 539, 563-71 (1974) (discussing minimum

18  requirements for procedural due process in inmate disciplinary proceedings).  However, where

19  an administrative remedy exists, was utilized, and corrected the procedural error, due process is

20  satisfied. Frank v. Schultz, 808 F.3d 762, 764 (9th Cir. 2015).

21    Defendants move for summary judgment on the grounds that plaintiff did not have a

22  liberty interest in being free from Ad-Seg placement or transfer to a higher security prison, and,

23  even if he did, plaintiff received the process due to him.  (ECF No. 48-5 at 30-33.)

24    **1.   Liberty Interest**

25    Plaintiff asserts his due process rights were violated when defendant Clark submitted the

26  RVR concerning plaintiff's false allegations about defendant Doane, when defendant Chambers

27  reviewed the RVR, defendant Blackwell adjudicated the RVR, and when defendant Wamble

28  recommended to keep plaintiff in Ad-Seg pending an institutional transfer.  (ECF No. 9 at 10.)

1    Plaintiff also claims his increase in custody points as a result of the RVR, and his transfer to a

2    higher-level-custody prison, further violated his rights.  (Id.)  Plaintiff supports his claim by

3    noting that he submitted a grievance concerning the RVR that eventually reversed the finding

4    and restored his custody credits.

5         As a threshold matter, plaintiff does not allege he was subjected to any "atypical and

6    significant hardship . . .in relation to the ordinary incidents of prison life."  Sandin, 515 U.S. at

7    484.  (See ECF No. 9 at 10-11.)  To the extent plaintiff attempts to raise a due-process claim

8    premised solely on his placement in Ad-Seg at CSP-Solano, defendants are entitled to judgment

9    as a matter of law, because administrative segregation generally falls within the terms of

10   confinement ordinarily contemplated by a sentence.  May v. Baldwin, 109 F.3d 557, 565 (9th

11   Cir. 1997) ("the Ninth Circuit explicitly has found that administrative segregation falls within

12   the terms of confinement ordinarily contemplated by a sentence"); Toussaint v. McCarthy, 801

13   F.2d 1080, 1091-92 (9th Cir. 1986).

14        Plaintiff's allegations that he was held in administrative segregation for longer than

15   necessary does not state a due process claim either.  See Hernandez v. Cox, 989 F.Supp.2d 1062,

16   1069 (D. Nev. 2013) (holding claim based on "only the pure fact of segregation and its duration,

17   not the conditions of segregation," was insufficient to state a due process claim); see also Bryant

18   v. Cortez, 536 F. Supp. 2d 1160, 1166-67 (C.D. Cal. 2008) (holding 18-month period of

19   confinement in administrative segregation did not constitute an atypical and significant hardship

20   as "[n]othing about the conditions in the [administrative segregation unit] indicate that the prison

21   could not arbitrarily choose to house Plaintiff there indefinitely"); see also Resnick v. Hayes,

22   213 F.3d 443, 448-49 (9th Cir. 2000) (holding that limited access to showers, recreational

23   opportunities, library access, and having a dirty mattress and cold food, was not actionable

24   because they were not different compared to general population housing).

25        Furthermore, even assuming plaintiff's increase in custody points and transfer to a level-

26   three prison constituted an adverse act, his claims still fail.  The Supreme Court has concluded

27   that the Constitution itself provides no liberty interest in staying at a particular institution.

28   Meachum v. Fano, 427 U.S. 215, 225-227 (1976) (holding that transfer from a medium to a

28

1   maximum security prison did not infringe or implicate a "liberty" interest within meaning of Due

2   Process Clause).  Furthermore, the Supreme Court has found that the Constitution provides no

3   liberty interest in remaining in the general population at a prison. Sandin, 515 U.S. at 485-86.

4   Nor does the Constitution provide a liberty interest in not losing privileges.  Baxter v.

5   Palmigiano, 425 U.S. 308, 323 (1976).

6           The Sandin factors do not support plaintiff's claim either.  Plaintiff did not identify any

7   unique conditions of his confinement that were not experienced by other inmates similarly

8   housed at Folsom.  (See ECF No. 9 at 10-11.)  Plaintiff identifies no departure from his

9   conditions other than moving to a prison that was "more dangerous."  (Id. at 11.)  However, the

10  very nature of prison includes housing around other convicted felons and is inherently

11  dangerous.  The Ninth Circuit has also held that "only the most extreme changes in the

12  conditions of confinement have been found to directly invoke the protections of the Due Process

13  Clause."  Chappell v. Mandeville, 706 F.3d 1052, 1063 (9th Cir. 2013).

14          Furthermore, the RVR at issue was ultimately reversed approximately five months after it

15  was issued and plaintiff's classification score was readjusted to reflect this.  (ECF No. 9 at 11.)

16  Additionally, plaintiff's 60 days of credits was restored to him upon the reversal of the RVR,

17  thereby eliminating any effect upon plaintiff's total sentence.  (Id.)  Therefore, the only concrete

18  impact the RVR had was to place plaintiff in Ad-Seg and then to transfer him to another prison;

19  as demonstrated above, this does not constitute the violation of a liberty interest.

20          Accordingly, because plaintiff had no liberty interest as a matter of law, defendants are

21  entitled to summary judgment concerning the due process claim.  The court need not reach

22  defendants' argument concerning the process that plaintiff received.

23  **IV.    Conclusion**

24          For the foregoing reasons, IT IS HEREBY ORDERED that:

25          1.      Defendants' evidentiary objections and motion to strike plaintiff's opposition

26  (ECF No. 59) is granted in part and denied in part;

27          2.      Defendants' objections and motion to strike plaintiff's unauthorized surreply

28  (ECF No. 61) is denied; and

1     3.     Plaintiff's motion for clarification (ECF No. 62) is denied.

2     For the foregoing reasons, IT IS HEREBY RECOMMENDED that:

3     1.     Defendants' motion for summary judgment (ECF No. 48) be granted; and

4     2.     Summary judgment be granted in full on behalf of all defendants.

These findings and recommendations are submitted to the United States District Judge assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(l).  Within fourteen days after being served with these findings and recommendations, any party may file written objections with the court and serve a copy on all parties.  Such a document should be captioned "Objections to Magistrate Judge's Findings and Recommendations."  Any response to the objections shall be filed and served within fourteen days after service of the objections.  The parties are advised that failure to file objections within the specified time may waive the right to appeal the District Court's order.  Martinez v. Ylst, 951 F.2d 1153 (9th Cir. 1991).

Dated:  March 20, 2017

DEBORAH BARNES
UNITED STATES MAGISTRATE JUDGE

TIM-DLB:10
DB / ORDERS / ORDERS.PRISONER.CIVIL RIGHTS / jone.0633.msj

30